1

2

3

4              IN THE UNITED STATES DISTRICT COURT

5                   FOR THE DISTRICT OF ARIZONA

6

7    RIBSY PRODUCTIONS, LLC, a          )   No.  CV 09-533-TUC-DCB
     California limited liability company; and )   (BPV)
8    ANDREW SKY, fka ANDREW            )
     SHLENSKY, an individual,           )
9                                       )
             Plaintiffs,                )   **REPORT AND**
10                                      )   **RECOMMENDATION**
     vs.                                )
11                                      )
     AURORA LOAN SERVICES, LLC, a       )
12   Delaware corporation, fka AURORA   )
     LOAN SERVICES, INC., a Delaware    )
13   corporation,                       )
                                        )
14           Defendant.                 )
                                        )
15   _____)

16        Pending before the Court is the Defendant's motion to dismiss for failure to state

17   a claim pursuant to Rule 12(b)(6), Fed.R.Civ.P. (Doc. No. 4).  Plaintiff's filed a

18   response and Defendant filed a reply.

19        Plaintiffs, Ribsy Productions, LLC (Ribsy), and Andrew Sky (Sky), allege

20   damages as a result of a failed short sale.  The Defendant, Aurora Loan Services, LLC

21   (Aurora), moves that this court dismiss the complaint for failure to state a claim upon

22   which relief can be granted and that the complaint is barred as a matter of law against

23   Aurora.

24        The case has been referred to Magistrate Judge Velasco for all pretrial matters

25   pursuant to Local Civil Rule 72.2.  Rules of Practice of the U.S. District Court for the

26   District of Arizona.

27        A hearing on the motion was held on Wednesday, November 18, 2009.

28

For reasons which follow, the Magistrate Judge recommends that the District Court GRANT Defendants' Motion to Dismiss Plaintiff's Complaint.

### FACTUAL AND PROCEDURAL BACKGROUND

The following facts are alleged in the complaint: Sky purchased a single family residence located at 5670 Old Spanish Trail, Tucson, AZ, (the Premises) on April 19, 2005. (Complaint, ¶ 5) On August 4, 2005, Sky refinanced the debt on the Premises with Pemm Tek Mortgage Services, LLC (the Lender). (*Id*. ¶ 7) The Lender reassigned all rights, title, and interest in the Note and Deed of Trust to Mortgage Electronic Registration Services, Inc, (MERS). (*Id*. ¶ 8)    At the time Sky refinanced the debt, Sky was unaware that the Premises were subject to substantial title defects that were not disclosed on the preliminary title report, and, as a result of the defects, was unable to lease or sell the Premises. (*Id*. ¶ 9-10)

Sky and a potential buyer for the Premises, Edward Kile (Kile), discussed the sale and acquisition of the Premises from July, 2007 to December, 2007. (*Id*. ¶ ¶ 11-12) Kile discovered the title defects during these discussions. (*Id*. ¶ 13) On December 8, 2007, Sky and Kile entered into a Residential Resale Real Estate Purchase Agreement ("Purchase agreement"). (*Id*. ¶ 16)

Kile's real estate broker, Michael Block ("Block"), worked to negotiate a short sale[1] for the Premises with Aurora[2], who had an outstanding lien balance of

---

[1] A short sale is one in which the mortgagee agrees to release the property from its mortgage even though the closing proceeds are insufficient to satisfy the outstanding balance of the seller's mortgage loan.

[2] The Complaint does not clearly allege Aurora's involvement in the transactions in question, although Defendant's motion to dismiss asserts that "[a]t some point after the recording of the deed of trust, [Aurora] became the servicer of the loan." (Motion to Dismiss, at 2.) The Court assumes, for purposes of this motion, that Plaintiffs general allegations regarding Aurora embrace this specific fact which would be necessary to

- 2 -

approximately $498,000, and with GMAC, a junior lien holder with an outstanding lien balance of $192,000. (*Id*. ¶¶ 17-18)

While Kile and Sky continued to attempt to negotiate a short sale with Aurora, Aurora initiated a foreclosure of the Premises without informing Sky or Kile that it did not intend to allow the short sale of the Premises. (*Id*. ¶¶ 22-24) On March 28, 2008, Block learned from an Aurora employee that Aurora had commenced the foreclosure action on the property. (*Id*. ¶¶ 26-28) Block immediately informed Sky of the pending foreclosure, and Sky obtained an extension of the Trustee Sale date for sixty days. (*Id*. ¶¶ 29-30)

Sky and Block continued to negotiate a Short Sale with Aurora to Kile, resulting in Aurora expressly informing Block that Aurora would agree to allow the discharge of Aurora's lien on the Premises for $155,000. (*Id*. ¶¶ 30-31) A new purchase agreement ("the Purchase Agreement") was drafted and executed, and sent to Aurora on May 20, 2008. (*Id*. ¶¶ 33-34). Aurora failed to immediately agree to the new purchase agreement. (*Id*. ¶ 34) On May 29, 2008, Block delivered to Aurora the new purchase agreement for the premises at the purchase price specified by Aurora. (*Id*. ¶ 35) On June 19, 2008, Aurora sent a letter ("Demand Statement")[3] to First American

---

support them. *See* Discussion, infra, regarding the standard of review to be applied in analyzing a motion to dismiss for failure to state a claim. Sec. II.

[3] The Demand Statement is alternately referred to by Plaintiffs as the Short-Sale Letter, or, after Defendants filed their motion to dismiss, as the Short-Sale Contract. (See Complaint, ¶ 36; Response to Motion to Dismiss, p. 4.) The subject matter of the letter was captioned "Short Payoff Approval: Demand Statement" and will be referred to by this Court accordingly. Similarly, Plaintiffs recaptioned the Purchase Agreement as "the Contract" in Plaintiffs' response. The Court will refer to the document as the Purchase Agreement. It is the contents of the documents that determine their legal significance, not the Plaintiffs' choice of nomenclature.

Title Company ("FATCO") stating it would accept a payment of $155,000 to satisfy its lien in full, but providing less than twenty-one days for Kile to complete and close the transaction. (*Id.* ¶ 36)

On June 29, 2008, Kile assigned all his interest in the purchase agreement to Ribsy. (*Id.* ¶ 39) On June 29, 2008, Ribsy notified FATCO that it had secured funding to finance the acquisition of the Premises and had the loan documents delivered to FATCO. (*Id.* ¶ 40) FATCO demanded that Ribsy secure clarification from Aurora regarding the Demand Statement regarding financing of the purchase. (*Id.* ¶ 41) Despite repeated attempts from Ribsy, Block and Sky to obtain clarification, no clarification was received from Aurora. (*Id.* ¶ 42-44) Because of Aurora's failure to respond, FATCO refused to provide an American Land Title Association (ALTA) Lender's title insurance policy, and, without such policy, the investor financing the purchase for Ribsy was unable to complete the transaction. (*Id.* ¶ 46) Thereafter, Aurora sought to proceed with the Trustee Sale. (*Id.* ¶ 48-49)

On July 14, 2008, Sky transferred the Premises to Ribsy. (*Id.* ¶ 50) Ribsy attempted to complete the transaction and pay the Demand Statement amount to Aurora, but Aurora failed to respond. (*Id.* ¶ 52) Ribsy filed Chapter 11 bankruptcy to protect the Premises as an asset of Ribsy. (*Id.* ¶ 53) On July 29, 2009[4], MERS assigned all right, title and interest to the Note and Deed of Trust to Aurora, who was previously only the servicing agent. (*Id.* ¶ 57) Aurora cancelled its foreclosure sale on August 5, 2008, but failed to notify Ribsy or Sky of the cancellation. (*Id.* ¶ 59)

On August 21, 2008, Ribsy filed an Adversary Proceeding in the Bankruptcy Court against Aurora. (*Id.* ¶ 63) The Bankruptcy Court dismissed the Adversary without prejudice, allowing Ribsy to sue in Arizona State Court. (*Id.* ¶ 64)

---

[4] This date is probably a typographical error, and should probably read July 29, 2008.

On August 20, 2009, Plaintiffs filed a complaint in state court, which was later removed to the United States District Court for the District of Arizona, alleging: (1) breach of contract; (2) specific performance; (3) negligence; (4-5) two counts of intentional interference with economic prospective advantage; (6-7) two counts of intentional interference with contract; (8) breach of covenant of good faith and fair dealing; (9) trespass; (10) defamation; and (11) unjust enrichment.

DISCUSSION

## I.    Governing Law

This Court has diversity jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because the amount in controversy exceed $75,000 exclusive of interest and costs, and the adverse parties are of diverse citizenship.  Under the Erie Doctrine, federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Freund v. Nycomed Amersham*, 347 F.3d 752, (9th Cir. 2003).  "[T]he interpretation of a contract is a question of law for the court and where the language of a contract is clear and unambiguous it must be given effect as it is written. Whether a contract is ambiguous or not is also a question of law." *Amfac Distrib. Corp. v. J.B. Contractors, Inc.*, 146 Ariz. 19, 703 P.2d 566, 570 (Ariz.Ct.App.1985).  "Contracts are to be read in light of the parties' intentions as reflected by their language and in view of all circumstances; if the intention of the parties is clear from such a reading, there is no ambiguity." *Harris v. Harris*, 195 Ariz. 559, 991 P.2d 262, 265 (Ariz.Ct.App.1999).

## II.   Standard of Review

To survive a motion to dismiss, the non-conclusory "factual content," and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. *Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). The plausibility standard "asks

for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal,* 129 S.Ct. at 1949. (quoting *Twombly,* 550 U.S. at 555) (internal citations omitted). When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson,* 84 F.3d 1213, 1217 (9th Cir. 1996).[5] In addition, the Court must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.,* 37 F.3d 517, 521 (9th Cir. 1994). Although "a complaint need not contain detailed factual allegations," *Clemens,* 534 F.3d at 1022, the Court will not assume that the plaintiff can prove facts different from those alleged in the complaint, *see Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526 (1983); *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.,* 407 F.3d 1027, 1035 (9th

---

[5]Under the incorporation by reference doctrine,

> even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim . . . . The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).

*United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003) (internal citations omitted). Here, the Complaint refers extensively to the Residential Resale Real Estate Purchase Agreement between Kile and Sky (Doc. No. 5, attached exhibit), and the Short Payoff Approval: Demand Statement aka the Short Sale Letter (*Id.*), and those agreements form the basis of a number of Plaintiffs' claims. As neither party contests the authenticity of the Purchase Agreement or Demand Statement, they will be incorporated into the Complaint and all facts contained therein are assumed to be true for the purpose of consideration of this motion.

Cir. 2005).  Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

## III.   Analysis

### A.     Breach of Contract

Plaintiff's complaint alleges that the issuance of the Demand Statement by Aurora constituted a contract between Kile, Sky, and Aurora.  (Complaint, ¶ 72) Plaintiff further alleges that Aurora had a duty to act in a reasonable and prudent business-like manner as a result of issuing the Demand Statement and its contractual duties to Ribsy and Sky, but that it failed to act in a reasonable and prudent business-like manner and, by failing to communicate with Ribsy, Block, Sky, or FATCO, breached its contractual duty owed to Ribsy.  (*Id.* ¶ 77-81)

#### 1.     *Failure To Allege Fundamental Elements of Breach of Contract Claim*

Defendant asserts that Plaintiffs have failed to allege even the fundamental elements of a breach of contract claim.  (Motion to Dismiss, at 4.)  In a breach of contract claim, the plaintiff has the burden of proving the existence of the contract, its breach and the resulting damages.  *Graham v. Asbury*  112 Ariz. 184, 185 (Ariz. 1975)(citing *Clark v. Compania Ganadera de Cananea*, S.A., 95 Ariz. 90 (1963)).

##### a.     Existence of a contract

Defendant asserts that the complaint does not set out the elements, obligations or requirements of the contract, and, further Plaintiff provides no evidence of the contract in question.  Plaintiffs submitted a copy of the Purchase Agreement and Demand Statement, which this Court finds incorporated into the complaint, *see* ¶ II, n.1, *supra*, as evidence of a valid contract, but insist that the complaint is facially sufficient to support their claims.

The requirements of an enforceable contract are 1) an offer; 2) an acceptance; 3) consideration; and 4) sufficient specification of terms so that the parties' obligations can be determined. *Flory v. Silvercrest Industries*, Inc., 129 Ariz. 574, 581 (1981) (citing *Savoca Masonry Co. v. Homes & Son. Constr.Co.*, 112 Ariz. 392 (1975)). Plaintiffs state that the first element, an offer, is satisfied through its demonstration in the complaint of the purchase agreement and Aurora's issuance of the Demand Statement (Response to Motion to Dismiss, at 5, citing Complaint, ¶ 31, 33-37). Plaintiffs state that the second element, acceptance, is satisfied by the acceptance by Sky, Kile and Aurora, and assignment of the contract to Ribsy. (*Id.*) Plaintiffs state that the third element, consideration, consisted of Kile's promise to pay $158,000 and Aurora's agreement to accept this sum. (*Id.*) Plaintiffs state that the fourth element, specific statement, is detailed in the Purchase Agreement and the Demand Statement (*Id.*)

The Demand Statement acknowledges Aurora's approval of the sale of the Premises that would result in a short payoff of the mortgage, the approval being based on the Purchase Agreement between Kile and Sky, dated May 8, 2008. The letter was sent to FATCO, and "constitute[d] Aurora's instructions to the Settlement Agent." The approval was conditioned on several criteria listed by Aurora, including a payoff amount of $154,221.79, and contained a notice that the transaction was not considered complete until all contingencies of approval had been met. The Demand Statement is not signed.

The Demand Statement was not an offer, but a statement of Aurora's position to *FATCO* regarding the Purchase Agreement between Kile and Sky. At most, it was an escrow agreement to accept a "short payoff of the mortgage" once certain contingencies of approval had been met. *See McCormack v. Kirtley*, 115 Ariz. 25, 28 (1977)("[A]n escrow is a written instrument which by its terms imports a legal

obligation, and which is deposited with a third party, to be kept by the depository until the performance of the prescribed condition or the happening of a certain event, and then to be delivered over to the grantee, promisee, or obligee.")(citing *Young v. Bishop*, 88 Ariz. 140, 146 (1960)).  As an escrow agreement, the agreement to accept a short payoff of the mortgage was conditioned on, among other things, the receipt of a minimum payoff amount of $154,221.79.  On Plaintiffs end, they did not comply with the terms of the Demand Statement by the date specified by Aurora.  *See Allan v. Martin*, 117 Ariz. 591 (1978) (when time for performance is material to a contract and one party fails to perform by the contract deadline date, the other party may treat the contract as ended.) (citing Corbin on Contracts § 716 (1960); *Phillips and Colby Construction Co. v. Seymour*, 91 U.S. 646 (1875) *Morris v. Prefabrication Engineering Co.*, 160 F.3d 779 (5th Cir. 1947)).  The conditions of the agreement were not met, and thus, Defendants were released from any obligation they may have had under the escrow agreement.

Assuming *arguendo*, that Aurora's issuance of the Demand Statement was an offer to Plaintiffs, the acceptance was clearly conditioned on, among other requirements, the receipt of the minimum payoff amount, and receipt of itemized closing costs, a completed signed contract, and a final "HUD 1" settlement statement. The conveyance of Kile's interest in the purchase agreement to Ribsy was not a manifestation of assent which created a contract with Aurora.  Furthermore, Plaintiffs attempts to contact Aurora for "clarification" demonstrate that there was no meeting of the minds regarding the terms of the alleged contract.  Plaintiffs allege in the complaint that they requested an amended or new short-sale letter from Aurora, but received no communication in return.  (Complaint, ¶ 43-44)   Although Kile's assignment of his interest in the Purchase Agreement was at least contemplated by that document, the attempt by Ribsy to secure financing for the purchase was not contemplated by the

Purchase Agreement, and, in fact the Purchase Agreement stated that "[t]his is an ALL CASH sale" and the buyer, Kile, lined out the entire section regarding financing and initialed the line. Despite Plaintiffs' conclusion in the complaint that this would not have been a "material change" to the contract, this would have been a material change in the Purchase Agreement, and, as much as the Demand Statement was based on the May 8, 2008 Purchase Agreement, any attempt to change the terms of the Purchase Agreement would have constituted a counter-offer, and as such, would have to have been ratified by Aurora before it became an enforceable contract. *See Schade v. Diethrich*, 158 Ariz. 1, 9 (1988) (the "ultimate element of contract formation [is] the question whether the parties manifested assent or intent to be bound."); *Pareto*, 139 F.3d at 699 ("conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."). Although in Arizona a contract may be formed, even if not formally executed, if it is clear the parties intended to bind themselves to the terms, *see Johnson Int'l v. City of Phoenix*, 192 Ariz. 466 (App. 1998), the allegations of material fact alleged in the complaint, taken as true and construed in the light most favorable to Plaintiffs, do not provide any support for Plaintiff's legal conclusion that Aurora manifested an intent to accept Plaintiffs' counteroffer. The complaint in fact, alleges the exact opposite, that Aurora did not respond at all to Plaintiffs' attempts to change the terms of the contract.

b. Breach of contract

Plaintiffs assert that implied in the contract was Aurora's obligation to respond to the requests of Ribsy and Sky to assist in the completion of the transaction so Aurora could be paid in full and Sky released from his mortgage obligation. As there was no formation of a contract, however, there can be no breach for failure to comply with implied terms.

2. *Statute of Frauds*

- 10 -

Defendant asserts that all of Plaintiffs' allegations related to breach of contract concern the sale of property, and, as such, fall within the statue of frauds in Arizona. Defendant argues that no claim for relief is stated where it appears from the face of the complaint that the contract relied on is unenforceable because of the statute of frauds, and nothing appears in the complaint to take the case out of operation of the statute. (Motion to Dismiss, at 4)(citing *Gene Hancock Const. Co. v. Kempton & Snedigar Dairy*, 20 Ariz.App. 122, 124 (1973) (A.R.S. § 44-101)[disavowed on other grounds]).

Arizona law prohibits actions upon agreements for the sale of real property or any interest therein, unless the promise or agreement is in writing and signed by the party to be charged. A.R.S. § 44-101(6). For reasons stated above, this Court finds that there was no contract, but at most an escrow agreement. The subject of the escrow agreement was the release of the mortgage secured by the Premises, and, as such, falls within the statute of frauds. *Accord Fremming Const. Co. v. Security Sav. and Loan Ass'n*, 115 Ariz. 514, 516 (App. 1977)(rejecting argument that A.R.S. § 44-101(6) does not apply to mortgage, as mortgage is not a "sale" of real property, or an interest therein, but is merely a lien; holding instead that agreement to make loans and mortgages at a fixed rate of interest falls within the statute of frauds). Furthermore, modifications of a mortgage contract, which are subject to the statute of frauds in the first instance, cannot be modified except by an agreement that itself satisfies the statute of frauds. *Weldon v. Greer,* 29 Ariz. 383 (1926); *Leavitt v. Wells Fargo Bank, N.A.*, 2009 WL 1178708, *2 (D. Ariz. 2009). Plaintiffs state that the Demand Statement was executed by an authorized Aurora employee, and thus Plaintiffs complied with the statute of frauds. The exhibit attached to Plaintiffs' response, however, is unsigned. This makes the escrow agreement unenforceable. *See Brought v. Howard*, 30 Ariz. 522, 532 (1926). (any agreement subject to the statue of frauds which fails to meet its requirement is not void, but is unenforceable).

### 3. Specific Performance

The parties to this case agree that in order for a party to prevail on a specific performance case, Arizona requires, first, a showing of a contract. *See Shreeve v. Greer*, 65 Ariz. 35, 39 (1946); *Ealey v. Earven*, 131 Ariz. 182, 185 (1981). As discussed above, Plaintiffs assertion of the legal conclusion that a contract existed to support a claim for specific performance is an unwarranted inference, and insufficient to defeat Defendant's motion to dismiss. *See Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

### B. Negligence

### 1. Duty

One of the basic elements of a negligence cause of action is that the defendant owed the plaintiff a duty of care. *Wells Fargo Bank v. Arizona Laborers*, 201 Ariz. 474, 483, 38 P.3d 12, 21 (Ariz.,2002). The Court determines the threshold issue of the existence of a duty of care as a matter of law. *Knauss v. DND Neffson Co.*, 963 P.2d 271, 273 (1997) (citations omitted). Where a party lacks standing to bring a contract claim, he will certainly lack standing to bring a tort claim, which may require the additional showing of a "special relationship." *See Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986) (en banc).[6]

---

[6] Although Arizona courts also recognize that a "legal duty" may be owed a Plaintiff even in the absence of a "special relationship," such as that of attorney-client, or doctor-patient, these duties are imposed by law; for example, the a claim of fraudulent inducement of a contract does not arise out of the contract because the duty not to commit fraud exists, even when there is no contractual relationship between the parties at all. *See Barmat v. John and Jane Does Partners A-D*, 155 Ariz. 519 (1987); *Ramsey Air Meds, LLC v. Cutter Aviation, Inc.*, 198 Ariz. 10 (App. 2000)(citations omitted). The Complaint, however, does not allege any duty imposed by law on Aurora which would suffice to maintain Plaintiffs negligence claim outside of any contractual duty owed Plaintiffs.

Defendant argues that, Aurora, in its capacity as a lender, owed no duty to Plaintiff. Plaintiffs assert, in response, that Aurora had a duty to act in a reasonable and business-like manner, due to the contract between Ribsy and Aurora, and Aurora breached its duty by failing to communicate with Ribsy after Ribsy made persistent and continuous efforts, and, that as a result, Ribsy was injured and forced to file bankruptcy.

Ribsy would only have standing to allege a negligence cause of action if Ribsy was owed a duty of care by Aurora. As explained above, the allegations to not support Plaintiffs' claim that there was a contractual relationship between Ribsy and Aurora. Furthermore, even if the complaint were sufficient to establish that the Demand Statement formed a contract, Ribsy was not an intended beneficiary of that contract. "The Arizona rule is that in order for a person to recover as a third-party beneficiary of a contract, an intention to benefit that person must be indicated in the contract itself[.] The contemplated benefit must be both intentional and direct, and it must definitely appear that the parties intend to recognize the third party as a primary party in interest. *Nahom v. Blue Cross and Blue Shield of Arizona*, 180 Ariz. 548, 885 P.2d 1113, 1117 (1994) (quoting *Norton v. First Federal Sav.*, 128 Ariz. 176, 178 (1981)) (internal citations omitted). Thus, under Arizona law, Ribsy has no standing to bring a negligence claim.

### 2. *Economic Loss Rule*

Defendant asserts that, in addition to failing to demonstrate that Aurora owed a duty of care to Plaintiffs, the "economic loss rule" would bar Plaintiffs from recovering economic damages by demonstrating a negligence claim. (See Motion to Dismiss, at 6, citing *Carstens v. City of Phoenix*, 206 Ariz. 123, 125-26 (App. 2003)). Plaintiffs assert that, in Arizona, the only cases where Arizona has applied the economic loss doctrine are construction defect cases, and since this is not such a case, the economic

loss doctrine does not apply. (*See* Response to Motion to Dismiss, at 8, citing *Carsten*, *supra*.)

While Plaintiffs' statement that Arizona has only applied the economic loss doctrine in construction cases may be true, this is because the lines between contract and tort claims are especially blurred in the context of strict liability and warranty breach, and the rationale behind the rule supports application in a broader context. The economic loss rule generally "bars a party from recovering economic damages in tort unless accompanied by a physical harm." *Carstens*, 206 Ariz. at 125. The rule precludes a party from circumventing contract remedies by recasting a contract claim as a tort. *Hayden Bus. Ctr. Condos. Ass'n v. Pegasus Dev. Corp.*, 209 Ariz. 511, 516 (App. 2005)(*disapproved of in part by Lofts at Filmore Condo. Ass'n v. Reliance Commercial Const. Inc.*, 218 Ariz. 574 (2008). In Arizona, a party seeking contract remedies for a tort may be precluded from recovery if their loss is purely economic; "[p]urely economic loss is generally defined as 'the loss of the benefit of the user's bargain ... including ... pecuniary damage for inadequate value, the cost of repair and replacement of the defective product, or consequent loss of profits without any claim of personal injury or damages to other property.'" *Carstens*, 206 Ariz. at 126 n.2 (quoting *Calloway v. City of Reno*, 116 Nev. 250 (2000). Thus, the economic loss doctrine would apply to bar Plaintiff from recovering economic damages.

C.      Intentional Interference With Contract And Prospective Advantage

In order to state a claim for intentional interference with contractual relations and business expectancies, a plaintiff must assert that the defendant induced or otherwise purposely caused a third-party not to (1) perform a contract with another or (2) enter into or continue a business relationship with another. *Pre-fit Door, Inc. v. Dor-ways, Inc.*, 13 Ariz.App. 438, 440-41 (App.1970) (citing Restatement of Torts § 766). "In order for the plaintiff to prove a *prima facie* case it is fundamental that it must establish

- 14 -

the existence of a valid contractual relationship or business expectancy." *Id*. at 441. "If the interferer is to be held liable for committing a wrong, his liability must be based on more than the act of interference alone. Thus, there is ordinarily no liability absent a showing that [the interferer's] actions were improper as to motive or means." *Arizona Motorsports Park, LLC v. Maricopa County* 2009 WL 2634645, 5 (Ariz.App. 2009)(quoting *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 388 (1985)). Plaintiffs have pleaded that Aurora "acted intentionally to disrupt the economic advantage that Ribsy and Sky had obtained from the lender to purchase the premises." The facts alleged which support this claim are that Aurora was provided actual knowledge of the relationship between Ribsy, Sky and GMAC by telephone and email communications, but failed to respond to the requests to clarify or amend the Demand Statement. This is insufficient to support a claim that Aurora's action (or inaction) was improper as to motive or means. *See Iqbal*, 129 S. Ct. at 1949 (Where well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' - 'that the pleader is entitled to relief.'").

Further, Arizona law requires that when a relationship is prospective, there must be a reasonable assurance that the contract or relationship would have been entered into. *Megawatt Corp. v. Tucson Elec. Power Co.*, 1989 WL 95602 (D. Ariz. 1989) (citing *Marmis v. Solot Co.*, 117 Ariz. 499 (1977). Plaintiffs must be able to prove with a reasonable assurance that they would have prevailed but for the interference by defendants. "A claim for tortious interference with a business expectancy is insufficient unless the plaintiff alleges facts showing the expectancy constitutes more than a mere 'hope.'" *Dube v. Likins*, 216 Ariz. 406 (App. 2007) (citing *Marmis*, 117 Ariz. 499.). The Complaint alleges that "Ribsy was ready, willing and offered to perform upon Aurora responding to their requests to clarify the [Demand Statement]" (Complaint, ¶ 75), and that Aurora acted intentionally to disrupt the economic advantage that Ribsy

- 15 -

and Sky had obtained from the contract with the lender to purchase the Premises and having funding from Ribsy's lender to fund the rehabilitation of the Premises as well as the payment of Sky's debt and liens held by Aurora against the Premises. (*Id.*, ¶ 102) The Purchase Agreement demonstrates that there was an expectancy that the short sale would be approved, although, at the time Kile and Sky entered into the agreement, this expectancy was prospective.[7] A further prospective expectancy arose when Ribsy negotiated to obtain a loan in the hopes that Aurora would approve the financing arrangement, despite its indication in the Demand Statement that its approval was conditioned on the terms of the original Purchase Agreement. Plaintiffs have not alleged facts that show that the expectancy was anything more than a mere "hope" that Aurora would clarify or amend the Demand Statement to accept the new terms proposed by Plaintiffs.

    D.    <u>Breach Of Good Faith And Fair Dealing</u>

"Arizona law implies a covenant of good faith and fair dealing" in every contract," which "prohibits a party from doing anything to prevent other parties ... from receiving the benefits and entitlements of the agreement." *Wells Fargo Bank v. Arizona Laborers Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 490 (2002). The covenant can be breached even if the express terms of the contract are not breached, when an injury arises from one party abusing their superior bargaining power. *Id.* at 491.

"The law implies a covenant of good faith and fair dealing in every contract." *Rawlings v. Apodaca*, 151 Ariz. 149 (1986)(citing *Wagenseller,* 147 Ariz. at 383 (1985); Restatement (Second) of Contracts § 205 (1981); and 5 Williston on Contracts § 670 at 159 (3rd ed., Jaeger ed. 1961) *see also McAlister v. Citibank*, 171 Ariz. 207, 212

---

[7] Although the Purchase Agreement notes in paragraph 1f that a "Short Sale Addendum" is incorporated into the agreement, the contents of the Short Sale Addendum are not alleged in the Complaint, nor attached to the Purchase Agreement exhibit.

(App. 1992). The Complaint concludes that Ribsy and Sky had completed all of its obligations and conditions for Aurora's performance to occur under the contract. (Complaint, ¶ 131-133). The Complaint asserts that Aurora breached its duty of good faith and fair dealing when it failed to communicate with Ribsy, Sky, Block or FATCO in response to repeated requests. (*Id*., ¶ 137). As a result, Plaintiffs allege, Ribsy was damaged. (*Id*., ¶ 138)

Again, as discussed above, there are no factual allegations in the Complaint demonstrating a valid contract between Ribsy and Aurora, out of which a duty of good faith and fair dealing could arise. The "underlying contract provides the basis for a bad faith action." *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474 (2002). Absent a valid contractual relationship, a tort claim may be brought if Plaintiffs allege a duty arising out of a special relationship. "A party may bring an action in tort claiming damages for breach of the implied covenant of good faith, but only where there is a "special relationship between the parties arising from elements of public interest, adhesion, and fiduciary responsibility." *Id.*. at 491 (quoting *Burtons v. Tacker Title Ins. Co. of California*, 168 Ariz. 345, 355 (recognizing that special relationships in which tort damages for breach of contract may be available are those undertaken for something more than or other than commercial advantage, such as the procurement of service, professional help, security or other intangible.).

Action for breach of the covenant may sound in contract or in tort, but sustaining a tort claim requires the plaintiff to allege and prove a "special relationship between the parties arising from elements of the public interest, adhesion, of fiduciary responsibility." *Id*. Plaintiffs concede that they do not specifically make a claim in tort (Response, p. 13), and inspection of the Complaint affirms that they have not alleged the necessary "special relationship" to support an action in tort.

E.      Trespass

Plaintiffs allege that Aurora allowed a third party vendor to wrongfully enter upon the Premises, resulting in damage to the dead bolt lock on the Premises, and the inability to protect the Premises. Plaintiffs claim that the Premises were vandalized as a result of the vendor causing the dead-bolt lock not to work. Plaintiffs claim that Aurora is vicariously responsible for the wrongful acts of its contractors.

*1.      Rightful Possession*

Defendant asserts that Plaintiffs have failed to allege that, on December 15, 2008, the date the vendor allegedly wrongfully entered the property, that Plaintiffs were rightfully in possession of the land on which the trespass allegedly took place. Defendants assert that the Complaint alleges that Aurora foreclosed on the property in the middle of 2008, and that in December, 2008, Plaintiffs did not have the right to possess the Property.

Plaintiffs assert that Ribsy has been in possession of the Premises continually since July 14, 2008, citing Ribsy's filing of Chapter 11 bankruptcy which protected the Premises as an asset of Ribsy. (Complaint, ¶ 53) Defendants respond that Sky's assignment of the property to Ribsy was an unauthorized transfer.

In Arizona, trespass is "any unauthorized presence on another's personal property." *Medical Laboratory Management Consultants v. American Broadcasting Companies, Inc*. 30 F.Supp.2d 1182, 1201 (D.Ariz.,1998) (quoting *State ex rel. Purcell v. Superior Court In and For Maricopa County*, 535 P.2d 1299, 1301 (Ariz.1975)). To recover damages resulting from Defendant's entry on the premises, the Plaintiffs must establish their possessory right in the property. *See* Restatement (Second) of Torts §§ 157-158; *See also Sullins v. Third and Catalina Const. Partnership* 124 Ariz. 114 (App. 1979) (It is axiomatic that the courts of Arizona will follow the application of the Restatement (Second) of Torts in the absence of authority to the contrary).

Plaintiff Ribsy has alleged no facts to support his claim that he had a "beneficial ownership interest" in the Premises. (Complaint, ¶ 55) Although Ribsy asserts that his interest in the Premises was protected by his Bankruptcy filing, Ribsy's Bankruptcy proceedings were dismissed. (*See Ribsy Productions, LLC, v. Aurora Loan Services*, Case No. 08-7393-LA11, United States Bankruptcy Court for the Southern District of California, Minute Order dated January 29, 2009, attached). In dismissing the proceedings, the Bankruptcy Judge noted that "transfer from Sky to debtor was not authorized by Aurora." (*Id.*) Plaintiffs must claim an actual or constructive possessory interest in order to maintain a cause of action for trespass, however, if Plaintiffs are disseisors, as to the true owners, they are not entitled to possession until the adverse possession has ripened into ownership by lapse of time, which has not occurred in this case. *See* Restatement (Second) of Torts § 157-158, Comment b. Because the gist of the action in trespass is injury to property, Plaintiffs have failed to state a claim upon which relief could be granted for damages to their possessory interest. *See Pinkerton v. Pritchard*, 71 Ariz. 117, 128-129 (1950)(J. Udall *dissenting*); *see also Levy v. McClintock*, 125 S.W. 546, 548 (Mo.App. 1910)("[A]n action for trespass to real estate, the gist of the action being an injury to the possession of such property, cannot be maintained against one who, at the time of the alleged trespass, was lawfully entitled to such possession.") In fact, Plaintiffs have pled facts in the complaint which demonstrate that, at the time of the alleged trespass, Aurora was assigned all right, title and interest in the Deed of Trust (Complaint, ¶ 57), and, as such, Plaintiffs cannot demonstrate that Defendant entered the land without right. Furthermore, Plaintiffs allege that it was not Defendant, but a "third party vendor" who entered the property with permission from Defendant. This is also insufficient to state a claim for trespass under Arizona law. While an employee is liable for the negligence of its employee under the doctrine of *respondeat superior*, an employer is not liable for the negligence

- 19 -

of an independent contractor. *Rand v. Porsche Financial Services*, 216 Ariz. 424 (App. 2007). Plaintiffs have not pled any facts sufficient to demonstrate that any exception to this general rule would allow this claim to proceed.

F.      Defamation

Plaintiffs Complaint alleges that Aurora caused the input of false credit information to national credit reporting agencies, and, as a result of the false and erroneous reports by Aurora, the credit agencies have caused this wrongful and incorrect information to be published. (Complaint, ¶ 151-52.)

Defendant asserts that Aurora's statements to credit reporting agencies are privileged, as a statement made by a person with an interest in the information being communicated. Defendants additionally argue that Arizona law is preempted by federal law. Plaintiffs respond that Aurora is not protected by any federal or state law from falsely reporting credit information and knowingly reporting the information to a third party.

To establish defamation in Arizona, the Plaintiffs must prove that Aurora: (a) made a knowingly false statement that defamed the Plaintiffs, (b) acted in reckless disregard to the truthfulness of the statements, or (c) acted negligently in failing to ascertain the truth of the statements. See *Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 560 P.2d 1216, 1222 (1977); Restatement 2d of Torts § 580B.

Plaintiffs complaint fails under the first requirement. Plaintiffs allege that Aurora wrongfully reported Sky's nonpayment of his continuing monthly required NOTE/DOT payments that "would not have been required to be made by Sky, but for Aurora's wrongful misconduct." In other words, Plaintiffs concede the delinquency of payments, which were required to be made, but challenge the underlying conduct by Aurora that necessitated these continuing payments. Plaintiffs fail to make more than a blanket assertion that Aurora caused the input or publishing of false information to

credit reporting agencies; without allegations that the statements were, in fact, false, the "non-conclusory 'factual content,' and reasonable inferences from that content" are not plausibly suggestive of a claim entitling the Plaintiffs to relief. *See Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)); *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341 (1989)("To be defamatory, a publication must be false...").

Because Plaintiffs fail to state a valid defamation claim, the Court need not consider Defendants arguments that Aurora's communications are privileged or preempted by federal law.

G.    Unjust Enrichment

Plaintiffs allege that MERS and Aurora informed Block that Aurora was filing a title policy claim against the title insurer as Sky purchased an ATLA policy in favor of the lender. (Complaint, ¶ 155) Plaintiffs allege that Aurora knew, or should have known, that when it was paid by the title insurer that the Lender or Aurora would gain a windfall profit by foreclosing on the Premises as it had collected or made an agreement with the title insurer to be unjustly enriched at the expense of Sky and Ribsy. (*Id.*, ¶ 157)

Defendant asserts that Plaintiffs complaint fails to allege the elements of an unjust enrichment claim because Plaintiffs are pleading only a possible action taken by Aurora with regard to the title insurance, and therefore cannot establish unjust enrichment on the part of Defendant. Defendant also asserts that Plaintiff fails to plead his own impoverishment.

Plaintiffs respond that Aurora had an obligation to pay towards any outstanding balance lien owing by Plaintiffs from any amounts received from a title claim, as this payment should have been used and applied towards the existing lien. Plaintiffs claim

that when Aurora obtained any funds from its title claim, it failed to apply funds to the principal balance of the outstanding lien.

Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another. *Trustmark Ins. Co. v. Bank One, Arizona, NA* 202 Ariz. 535, 541 (App. 2002) (citing *City of Sierra Vista v. Cochise Enter., Inc.*, 144 Ariz. 375, 381 (App.1984)). To establish a claim for unjust enrichment, a party must show: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy. *Id.*

The Complaint fails to establish the elements of an unjust enrichment claim because 1) it fails to establish that Aurora filed the claim and received compensation; 2) that Sky was impoverished by Aurora's compensation; and 3) that there was an absence of justification for the enrichment, when, in fact, Sky alleges that the title insurance was purchased in favor of the Lender. Generally, the purpose of a title insurance policy issued in favor of a Lender is to cover its expectations of the title it will receive if it must foreclose its mortgage.

One circumstance under which a duty to compensate will be imposed is when there was an expectation of payment or compensation for services at the time they were rendered. Plaintiffs' complaint, in fact, demonstrates that the opposite was true in this case, that the title insurance policy was purchased in favor of the Lender. In Arizona, "the existence of a contract specifically governing the rights and obligations of each party precludes recovery for unjust enrichment." *USLife Title Co. of Arizona v. Gutkin*, 152 Ariz. 349, 354 (App. 1986)(citing *Brookes v. Valley Nat'l Bank*, 113 Ariz. 169 (1976); *Johnson v. American Nat'l Ins. Co.*, 126 Ariz. 219, 223 (App.1980). "That the doctrine of unjust enrichment has no application to express contractual situations, quite obviously, results from the fact that unjust enrichment is a form of restitutionary relief

- 22 -

available upon either "implied in fact" contract or quasi-contractual grounds." *Id.*, (citing *Pyeatte v. Pyeatte*, 135 Ariz. 346, 353 (App. 1982).

Because Plaintiffs have alleged no facts in the Complaint which demonstrate that Defendant was in fact enriched, that Plaintiffs were impoverished, and that there is an absence of justification for any restitution received by Defendant, this claim should be dismissed.

H.      Unclean Hands

The Court rejects Plaintiffs argument that Aurora brings its motion with unclean hands as inapplicable to this motion because the doctrine does not bar a defendant from seeking dismissal of a complaint. *See Tripati v. State, Arizona Dept. of Corrections*, 199 Ariz. 222, 225 (App.2000)("The doctrine of "unclean hands" is an equitable defense to a claim seeking equitable relief.")

In conclusion, for the reasons stated above, the Magistrate Judge recommends that the District Court grant the Defendant's motion to dismiss.  The Magistrate Judge further recommends that the District Court grant Defendant's request to dismiss with prejudice.  In response to Defendant's request, Plaintiffs have made no argument that the Complaint could be cured by amendment.  Although the Ninth Circuit has held that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts" *Lopez v. Smith*, 203 F.3d 1122,1130 (9th Cir. 2000), upon independent review of the entire pleading, the Magistrate Judge finds that the pleading cannot be cured by amendment, and, accordingly, recommends dismissal with prejudice.

///

///

///

**RECOMMENDATION**

This Court recommends that Defendant's motion to dismiss with prejudice(Doc. No. 4) be GRANTED.

Pursuant to Title 28 U.S.C. § 636(b), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: CIV 09-533-TUC-DCB.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the attorneys for the Plaintiffs and for the Defendant.

DATED this 22nd day of January, 2010.

_____
Bernardo P. Velasco
United States Magistrate Judge